37 A.3d 1264 (2012)
LIBERTY MUTUAL INSURANCE COMPANY, Petitioner
v.
BUREAU OF WORKERS' COMPENSATION, Fee Review Hearing Office (Kepko, D.O., Lindenbaum, D.O. c/o East Coast TMR), Respondents.
No. 1182 C.D. 2011.
Commonwealth Court of Pennsylvania.
Submitted on Briefs December 30, 2011.
Decided February 23, 2012.
*1266 Kevin M. Baxter, Philadelphia, for petitioner.
Patrick M. Donan, Philadelphia, for respondents Joseph Kepko, D.O. and Jeffrey Lindenbaum, D.O., c/o East Coast TMR.
BEFORE: LEADBETTER, President Judge[1], and BROBSON, Judge, and McCULLOUGH, Judge.
*1267 OPINION BY Judge McCULLOUGH.
Liberty Mutual Insurance Company (Insurer) petitions for review of the decision of a fee review hearing officer (Hearing Officer) involving six consolidated fee review petitions, all relating to therapeutic magnetic resonance (TMR) treatment[2] provided by Joseph Kepko, D.O., and Jeffrey Lindenbaum, D.O. (hereafter, Providers)[3] to Clairmont Kraemer (Claimant). In a decision and order dated May 27, 2011, the Hearing Officer affirmed the administrative decision of the Bureau of Workers' Compensation (Bureau) that Providers were entitled to no fees/payment reimbursement with respect to the applications for fee review numbers 237088 and 250483. However, the Hearing Officer reversed the Bureau's administrative decision concluding that Providers were entitled to $38.76 with respect to the applications for fee review numbers 221926, 225688, 226584 and 253421, and awarded Providers a combined total of $16,143.77 plus interest.[4] We now affirm.
Providers provided Claimant with TMR treatments on 10 separate service dates between June 2008 and March 2009. Providers submitted six bills encompassing these dates. For each treatment, Providers billed a total of $2898.00.[5] Providers listed each treatment under CPT code 76498,[6] which is generally used to identify magnetic resonance procedures. Insurer issued explanations of benefits denying reimbursement for five service dates, authorizing a payment of $400.00 for one service date, and authorizing a payment of $11.00, minus a PPO allowance of $1.31, for each of the remaining four service dates.[7] In denying reimbursement, Insurer described the TMR treatment as research, experimental, or investigative services or indicated that the bill was duplicative. To the contrary, the $400.00 payment was described as an unlisted procedure and the $11.00 payments were described as a downcoding to CPT code 76498 plus a PPO allowance. Providers thereafter filed six applications for fee review with the Bureau. The Bureau issued administrative decisions determining that Providers were due no reimbursement in five of the cases and $38.76 in the sixth case. Providers then filed written requests for hearings in each of these cases, after which the cases were consolidated and a hearing was conducted on February 24, 2011. (Findings of Fact Nos. 1-2.)
Insurer thereafter began using CPT code 97032, transcutaneous electric nerve stimulation, for TMR treatment. Subsequent to the issuance of hearing notices in *1268 these cases, Insurer downcoded Providers' bills to CPT code 97032 and issued explanations of benefits providing for payments of $25.05 and $25.95 for the service dates in 2008 and 2009, respectively, with the exception of the service date for which Insurer had previously paid $400.00. (Findings of Fact Nos. 7-8.)
Following the hearing, the Hearing Officer issued a decision affirming the Bureau's administrative decision that Providers were not entitled to reimbursement with respect to the applications for fee review numbers 237088 and 250483, because the applications in those cases were filed more than thirty days after issuance of the original explanations of benefits and, hence, were untimely. However, the Hearing Officer reversed the Bureau's remaining administrative decisions, concluding that Providers were entitled to a combined total of $16,143.77 plus interest with respect to the applications for fee review numbers 221926, 225688, 226584 and 253421, because Insurer failed to follow the correct procedures for downcoding the bills and/or denying reimbursement. Insurer then filed a petition for review with this Court.[8]

Burden Under the Act and the Regulations
Insurer first argues that the Hearing Officer erred in failing to assign to Providers the burden of proving that their bills were supported by adequate documentation. We disagree.
Section 306(f.1)(1)(i) of the Workers' Compensation Act (Act)[9] requires employers to provide payment for reasonable surgical and medical services rendered by physicians or other health care providers to claimants entitled to workers' compensation. Section 306(f.1)(2) requires any provider who treats an injured employee to file periodic reports with the employer on a form prescribed by the Bureau which shall include, where pertinent, history, diagnosis, treatment, prognosis, and physical findings. 77 P.S. § 531(2). Additionally, section 306(f.1)(3)(i)-(viii) caps a provider's charge at 113% of the applicable Medicare reimbursement rate and requires providers to use the appropriate Medicare procedure codes to identify the provided treatment. 77 P.S. § 531(3)(i)-(viii).
The Bureau has set forth specific procedures for the submission of medical bills in its Medical Cost Containment Regulations (Regulations). 34 Pa.Code §§ 127.1-127.755. A medical provider must submit requests for payment of medical bills on Form 1500, the UB92 Form, or any successor forms required by the Health Care Financing Administration (HCFA)[10] for submission of Medicare claims. 34 Pa.Code § 127.201(a). In addition, the provider must identify the treatment using the appropriate code under the Healthcare Common Procedure Coding System (HCPCS)-HCFA Common Procedure Coding System. 34 Pa.Code §§ 127.3, 127.201(b). Employers and insurers are not required to pay for treatment billed until a medical provider submits bills on one of the specified forms. 34 Pa.Code § 127.202(a). The Regulations mirror the Act's requirement that providers who treat injured employees submit *1269 periodic medical reports on a form prescribed by the Bureau. 34 Pa.Code § 127.203. Further, providers are required to state their actual charges for the treatment rendered, and it is the insurer's responsibility to calculate the proper amount of payment for that treatment, which may include the downcoding of a provider's assigned treatment code.[11] 34 Pa.Code §§ 127.205, 127.207.
Unlike the Act, the Regulations contain a provision permitting insurers to request additional documentation to support the medical bills submitted for payment by providers, as long as the additional documentation is relevant to the treatment for which payment was sought. 34 Pa.Code § 127.206. However, the Regulations do not address a provider's failure to submit the same. Moreover, neither the Act nor the Regulations impose a burden on a provider to submit adequate documentation. Furthermore, the record reveals that Providers provided medical records and supporting documentation in each of the six cases. Thus, we conclude that the Hearing Officer did not err in failing to assign to Providers the burden of proving that their bills were supported by adequate documentation.

Appropriate Codes/Estoppel
Next, Insurer argues that the Hearing Officer erred in failing to find that 97032 and 97035 are the appropriate codes for TMR treatments. Additionally, Insurer argues that Providers are collaterally estopped by decisions in similar fee review matters from re-litigating the issue of the appropriate code.[12] We disagree with both of these arguments. As indicated above, a determination of the appropriate code for TMR treatments was neither necessary nor relevant to the outcome of this case. Additionally, while Insurer cites previous fee review decisions in which other insurers downcoded TMR treatments to codes 97032 or 97039, Insurer failed to address these decisions before the Hearing Officer and, hence, these decisions will not be considered on appeal. Pa. R.A.P. 1551(a) (no question shall be heard or considered by an appellate court which was not raised before the government unit). Further, *1270 these decisions are not binding on this Court.[13] Moreover, the issue of whether Insurer properly downcoded Providers' bills is unique to this case and is not precluded by these previous decisions.

Noncompliance with Downcoding Regulations
Next, Insurer argues that the Hearing Officer erred in awarding Providers' their actual charges instead of the downcoded amounts. Again, we disagree.
The Regulations with respect to downcoding require an insurer to notify a provider in writing of the proposed changes and the reasons supporting the changes. 34 Pa.Code § 127.207(a)(1). Insurers also must give a provider 10 days to respond to the notice of proposed changes as well as the opportunity to discuss the proposed changes and offer support for the original coding decisions. 34 Pa.Code § 127.207(a)(2), (b). Importantly, the Regulations further provide that an insurer's failure to strictly comply with these requirements will result in the Bureau's resolution of an application for fee review in favor of a provider. 34 Pa.Code § 127.207(d). In this case, the Hearing Officer properly concluded that Insurer failed to strictly comply with the procedures for downcoding in four of the six cases. Thus, the Hearing Officer did not err in resolving the applications for fee review in favor of Providers in those cases and awarding Providers their actual charges.
Relying on Yablon v. Bureau of Workers' Compensation Fee Review Hearing Office (PMA), 20 A.3d 600 (Pa.Cmwlth. 2011), Insurer further contends that Providers were only entitled to the properly downcoded amounts, plus interest. In Yablon, the providers billed the insurer for vertebral axial decompression treatment provided to the claimant using CPT code 97799, a code used in situations where there is no physical medicine code describing the service performed. The insurer downcoded the bills, which resulted in the payment of a smaller fee to the providers. However, the insurer did not notify the providers of its intent to downcode the bills until after 30 days had passed from the submission of the bills.
A hearing officer determined that a workers' compensation insurer did not lose its right to downcode a provider's bill simply because more than 30 days had passed after the bill had been submitted.[14] Instead, the hearing officer held that the insurer's failure to pay the bill within 30 days merely subjected the insurer to additional interest payments. See 34 Pa.Code § 127.210 (failure to pay medical bill within 30 days of receipt of the required bills and medical reports results in the accrual of interest on the unpaid balance at the rate of 10% per annum). The hearing officer further held that the insurer had correctly downcoded the bills at issue. This Court affirmed.
However, Yablon is distinguishable from the facts of this case. In Yablon, the insurer failed to remit payment for the medical bills within the required 30 days but ultimately followed the proper procedures for downcoding and remitted the appropriate payments. In the present case, Insurer did not even attempt to *1271 downcode Providers' bills until approximately two years after it issued explanations of benefits denying payment on the basis that the TMR treatment was research, experimental, or investigative services and after Providers filed applications for fee review, the Bureau issued administrative decisions, Providers requested fee review hearings, and hearing notices were issued. The Hearing Officer noted that the new explanations of benefits proffered an entirely new ground for the downcoding,[15] which would require new applications for fee review and result in cases simultaneously pending before himself and the Bureau's fee review section. Accordingly, Insurer's reliance on Yablon is misplaced.
Insurer also argues that the Hearing Officer erred in concluding that Providers were entitled to payment for the TMR treatments that, according to Insurer, exceeded the reasonable value of that treatment. Once again, we disagree.
Section 306(f.1)(3)(i) of the Act states that a medical provider shall "not require, request or accept payment for the treatment, accommodations, products or services in excess of one hundred thirteen per centum of the ... applicable fee schedule... or ... any other Medicare reimbursement mechanism...." 77 P.S. § 531(3)(i). Additionally, this section states that "[i]f the prevailing charge, fee schedule ... or any other reimbursement has not been calculated under the Medicare program for a particular treatment, accommodation, product or service, the amount of the payment may not exceed eighty per centum of the charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided." Id.
The Regulations similarly state that "[i]f a Medicare payment mechanism does not exist for a particular treatment, accommodation, product or service, the amount of the payment made to a health care provider shall be either 80% of the usual and customary charge for that treatment, accommodation, product or service in the geographic area where rendered, or the actual charge, whichever is lower." 34 Pa.Code § 127.102. In this case, there is no dispute that no applicable Medicare reimbursement mechanism exists for the TMR treatment at issue. Hence, in accordance with section 306(f.1)(3)(i) of the Act and the Regulations, payment for this treatment would normally be capped at 80% of the usual and customary charge, or the actual charge, whichever was lower.
However, as noted above, Insurer bore the burden before the Hearing Officer to establish by a preponderance of the evidence that it properly reimbursed Providers, 34 Pa.Code § 127.259(f), and Providers correctly note that Insurer offered no evidence as to the usual and customary charge. Insurer counters that no such evidence was available because there was no competitive marketplace for this type of treatment, i.e., essentially every bill for TMR treatment has originated from East Coast TMR or other entities associated with the owner of East Coast TMR. Insurer also cites Medicare regulations permitting insurers to establish special payment limits where the standard rules for calculating payment amounts for a type of service would result in grossly deficient or excessive amounts, including situations involving a non-competitive marketplace, 42 C.F.R. § 405.502(g)(1)(iii), (vii)(A), and asserts that such regulations should apply under the circumstances presented here.
*1272 However, Insurer ignores the fact that it failed to cite or rely upon these Medicare regulations in its explanations of benefits reducing Providers' bills for the TMR treatment in this case. Instead, Insurer downcoded Providers' bills without strictly complying with the procedures for such downcoding. Because Insurer failed to follow the Regulations' downcoding procedures, the Hearing Officer properly held that Providers are entitled to their actual charges.

Remand Not Necessary
Next, Insurer argues that a remand is necessary in order for the Hearing Officer to issue additional findings of fact regarding the appropriate code and reimbursement rate for TMR treatments. We disagree. The Hearing Officer awarded Providers the full amounts that they billed, with a credit for prior payments made by Insurer, as a result of Insurer's failure to comply with the proper downcoding procedures. Given our conclusion that the Hearing Officer did not err in making this award, further findings regarding the appropriate code and reimbursement rate for TMR treatments are neither necessary nor relevant to the outcome of this case.

Award is Not a Penalty
Finally, Insurer argues that the Hearing Officer erred by effectively assessing penalties against it of about 1,150%. More specifically, Insurer contends that in awarding Providers' their actual charges, the Hearing Officer directed reimbursement to Providers at a rate approximately 1,150 times the rate attributable to the proper CPT code 97032 or 97035. Once more, we disagree.
Section 435(d)(i) of the Act, 77 P.S. § 991(d)(i), authorizes the imposition of penalties, generally 10% of the amount awarded plus interest, but up to 50% in cases of unreasonable or excessive delays, against an employer or insurer for violations of the Act or its rules and regulations. Penalties are payable to the same person to whom compensation is payable, i.e., the claimant. Id. In the present case, the Hearing Officer did not award, nor did Claimant receive, penalties. Instead, the Hearing Officer awarded Providers their actual charges after resolving several applications for fee review in Providers' favor. As noted above, such an award was proper and was authorized by the Regulations. See 34 Pa.Code § 127.207(d).
We reject Insurer's characterization of the Hearing Officer's award as a penalty as that term is used in section 435(d)(i) of the Act. Unlike penalties awarded under section 435(d)(i), the award provided by the Regulations does not relate to the amount awarded to a claimant, nor was it payable to the same person to whom compensation was payable. Rather, the amounts requested by, and awarded to, Providers merely represented the appropriate amount payable in light of Insurer's failure to strictly comply with the correct downcoding procedures. Thus, Insurer's argument in this regard lacks merit.
Accordingly, the order of the Hearing Officer is affirmed.
Judge BROBSON concurs in the result only.

ORDER
AND NOW, this 23rd day of February, 2012, the order of the Hearing Officer, dated May 27, 2011, is hereby affirmed.
NOTES
[1] This case was assigned to the opinion writer on or before January 6, 2012, when President Judge Leadbetter completed her term as President Judge.
[2] TMR treatment involves the application of electromagnetic waves or impulses to injured tissue. (R.R. at 79a, 85a-86a.)
[3] East Coast TMR received written authorization from Dr. Kepko to file fee reviews and fee review appeals on his behalf. Nevertheless, we will refer to Drs. Kepko and Lindenbaum together above as Providers.
[4] In his order, the Hearing Officer appears to have transposed certain numbers and referenced applications for fee review numbers 250843 and 253412. The correct numbers are 250483 and 253421.
[5] In many instances, the Providers' bills were broken down into four component charges, but the sum of these charges always totaled $2898.00. (Finding of Fact No. 2.)
[6] CPT code refers to a "Current Procedural Terminology" code developed, maintained, and copyrighted by the American Medical Association to help ensure uniformity among medical professionals and the health insurance industry. CPT codes consist of a group of numbers assigned to every task and service a medical practitioner may provide to a patient, including medical, surgical and diagnostic services.
[7] Subtracting the PPO allowance yields a payment of $9.69 for each of these four service dates, or a total of $38.76.
[8] Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact were supported by substantial evidence. Nationwide Mutual Fire Insurance Co. v. Bureau of Workers' Compensation Fee Review Hearing Office, 981 A.2d 366 (Pa.Cmwlth.2009), appeal denied, 605 Pa. 703, 990 A.2d 731 (2010).
[9] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 531(1)(i).
[10] The HCFA is now known as the Centers for Medicare & Medicaid Services, or CMS.
[11] The Act and the Regulations address both medical fee disputes and requests for utilization review. Sections 306(f.1)(5)-(6) of the Act, 77 P.S. §§ 531(5)-(6); 34 Pa.Code §§ 127.251-127.670. In medical fee disputes, the burden is initially upon the provider to establish that its application for fee review was timely filed. Pittsburgh Mercy Health System v. Bureau of Workers' Compensation, Fee Review Hearing Office (U.S. Steel Corporation), 980 A.2d 181 (Pa.Cmwlth.2009). Once a provider meets this burden, the burden then shifts to the insurer to establish by a preponderance of the evidence that it properly reimbursed the provider. 34 Pa.Code § 127.259(f); Thomas Jefferson University Hospital v. Bureau of Workers' Compensation Medical Fee Review Hearing Office, 794 A.2d 933 (Pa.Cmwlth.2002). In utilization review proceedings, the employer bears the burden of proof throughout the utilization review process to prove that the disputed treatment is not reasonable and necessary. CVA, Inc. v. Workers' Compensation Appeal Board (Riley), 29 A.3d 1224 (Pa.Cmwlth.2011).
[12] The doctrine of collateral estoppel operates to preclude the re-litigation of issues of fact or law determined in a prior proceeding. Mason v. Workmen's Compensation Appeal Board (Hilti Fastening Systems Corp.), 657 A.2d 1020 (Pa.Cmwlth.), appeal denied, 542 Pa. 679, 668 A.2d 1140 (1995). Collateral estoppel applies if: (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to actually litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. Callowhill Center Associates, LLC v. Zoning Board of Adjustment, 2 A.3d 802 (Pa.Cmwlth.2010), appeal denied, ___ Pa. ___, 20 A.3d 489 (2011).
[13] In fact, even the administrative agencies themselves are not bound by prior precedent. Barringer v. State Employees' Retirement Board, 987 A.2d 163 (Pa.Cmwlth.2009). The administrative agencies should, however, follow, distinguish, or overrule their own precedent. Id.
[14] Section 306(f.1)(5) of the Act, 77 P.S. § 531(5), mandates that all payments to providers for treatment provided pursuant to the Act be made within 30 days of receipt of the medical bills and records.
[15] The Hearing Officer described Insurer's issuance of new explanations of benefits as an attempt to switch the grounds for denying or reducing Providers' bills at the eleventh hour. (Hearing Officer Decision at 15.)