# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sedgwick Claims Management   :
Services, Inc.,   :
  :
      Petitioner   :
  :
      v.   : No. 1033 C.D. 2017
  : Argued: March 6, 2018
Bureau of Workers' Compensation,   :
Fee Review Hearing Office (Piszel and   :
Bucks County Pain Center),   :
  :
      Respondent   :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION BY**
**SENIOR JUDGE COLINS**             **FILED: April 11, 2018**


      This matter is a petition for review filed by Sedgwick Claims Management Services, Inc. (Sedgwick) appealing a fee review decision of a Bureau of Workers' Compensation (Bureau) fee review hearing officer (Hearing Officer) that ordered Sedgwick to pay chiropractor Michael Piszel, D.C. (Provider) for office visit charges in his treatment of workers' compensation claimant Robert Grivner (Claimant). The issue in this appeal is what constitutes "a significant and separately identifiable service performed in addition to the other procedure" under Workers' Compensation Medical Cost Containment Regulation 34 Pa. Code § 127.105(e), for which a chiropractor is entitled to payment for an office visit in addition to his charges for the treatment provided at the same visit. For the reasons set forth below,

we vacate the Hearing Officer's order and remand this case to the Bureau Fee Review Hearing Office to determine whether the office visit charges in question were for routine examinations involving no new medical condition, change in medical condition, or other circumstances that required an examination and assessment above and beyond the usual examination and evaluation for the treatment performed on that date.

Claimant suffered a work-related injury on February 28, 2005, in his employment with General Motors (Employer). Claimant and Employer entered into a Compromise and Release Agreement (C&R) with respect to that work injury that was approved by a workers' compensation judge (WCJ) on February 29, 2012. Under the C&R, Employer remains obligated to pay reasonable and necessary medical expenses for the work injury, described as right shoulder partial thickness tear and superior labrum tear with post-operative scarring and rotator cuff inflammation, and left shoulder overuse rotator cuff inflammation. (2014 Utilization Review Decision, Reproduced Record (R.R.) at 802a.) Sedgwick is Employer's workers' compensation insurance third-party administrator.

Claimant receives chiropractic treatment from Provider for shoulder and neck pain approximately three times per week. (2014 Utilization Review Decision, R.R. at 803a-804a; *see also* Provider's Treatment Notes, R.R. at 141a, 154a-158a, 217a-223a, 277a-281a, 328a-330a, 373a, 419a-420a, 540a-544a, 547a, 554a-556a, 562a-565a, 576a-579a, 585a-588a, 606a-609a, 654a-661a.) Between October 21, 2015 and April 22, 2016, Provider sent Sedgwick bills for his treatment of Claimant that included charges of $78.00 per visit for office visits on dates on which he provided chiropractic treatment to Claimant and billed for the other treatments. (Hearing Officer Decision Findings of Fact (F.F.) ¶¶5-8.) Sedgwick

2

denied payment for the office visit charges, but paid Provider for other treatments that he provided on those dates. (*Id.* F.F. ¶¶11-12.) Provider filed nine timely applications for fee review challenging Sedgwick's denials of payment for 39 of these same-day office visit charges.[1] The Bureau issued administrative determinations denying Provider's claims for the office visit charges. Provider timely filed requests for hearing to contest the nine fee review determinations and the Hearing Officer consolidated the requests for hearing with the consent of both parties.

In the proceedings before the Hearing Officer, Provider submitted an affidavit in which he stated that "[e]ach time I treat [Claimant], I perform a physical exam[,] I take a history of his subjective complaints, identify the objective findings on my exam, assess his condition and treatment recommendations, and give a plan" and that "[t]his is not included in the value of another procedure." (Provider Ex. 1, R.R. at 795a.) Provider's treatment notes for the office visits in question were also

---

[1] The fee review applications challenged nonpayment for office visits in the following time periods: October 21, 2015 to October 31, 2015; November 4, 2015 to November 18, 2015; December 4, 2015 to December 9, 2015; December 14, 2015 to December 22, 2015; December 23, 2015; January 6, 2016 to January 8, 2016; January 8, 2016 to January 11, 2016 and February 17, 2016 to February 24, 2016; March 21, 2016 to March 26, 2016; and April 6, 2016 to April 22, 2016. (Applications for Fee Review, R.R. at 116a-117a, 189a-190a, 268a-269a, 322a-323a, 368a-369a, 410a-411a, 461a-462a, 593a-594a, 631a-632a.) The 39 same-day office visits at issue were on October 21, 23, 28, 30 and 31, 2015, November 4, 6, 9, 11, 13, 16 and 18, 2015, December 4, 7, 9, 14, 16, 18, 21, and 23, 2015, January 6, 8, and 11, 2016, February 17, 19, 22, and 24, 2016; March 21, 23, 25, and 26, 2016; and April 6, 8, 11, 13, 15, 18, 20, and 22, 2016. (Explanations of Bill Review, R.R. at 129a, 133a, 135a, 251a-256a, 309a-310a, 336a-337a, 342a, 388a, 417a, 502a-503a, 525a-527a, 603a-604a, 650a-652a.) These are not the only dates in the October 21, 2015 and April 22, 2016 period for which Provider billed and Sedgwick denied payment for office visits on the same day as treatment. The record also includes denials of 4 same-day office visit charges between November 23 and November 30, 2015, 4 between December 28, 2015 and January 4, 2016, and at least 13 between January 13, 2016 and February 15, 2016 (Explanations of Bill Review, R.R. at 339a-341a, 444a-445a, 505a-508a, 511a-513a, 515a-516a, 520a-522a), but those dates and charges were not included in the fee review applications that are involved in this appeal.

3

admitted in evidence. These treatment notes show that the examinations concerned the same general conditions, right shoulder pain, left shoulder pain, and neck pain, and were only days apart from other examinations. (Provider's Treatment Notes, R.R. at 154a-158a, 217a-223a, 277a-280a, 328a-330a, 373a, 419a-420a, 547a, 585a-588a, 606a-609a, 654a-661a.) In addition, the parties introduced in evidence a 2014 WCJ decision rejecting a utilization review challenge to Provider's treatments of Claimant's work injury and a May 2015 decision of a different Bureau fee review hearing officer rejecting Provider's claims for same-day office visits in his treatment of Claimant in 2013 and 2014.

On July 5, 2017, the Hearing Officer issued a decision vacating the Bureau's administrative determinations in the nine fee review applications and ordered Sedgwick to pay all of the office visit charges. The Hearing Officer found Provider's affidavit credible. (Hearing Officer Decision F.F. ¶18.) The Hearing Officer recognized that under the Workers' Compensation Medical Cost Containment Regulations (Medical Cost Containment Regulations), payment for office visits on the same day that another procedure is performed is permitted "only when the office visit represents a significant and separately identifiable service performed in addition to the other procedure." (*Id.* Conclusion of Law (C.L.) ¶3) (quoting 34 Pa. Code § 127.105(e)) (emphasis omitted).) The Hearing Officer, however, made no factual findings as to the nature of any of the examinations and evaluations for which an office visit charge was billed and no findings as to whether any of them were non-routine or involved new medical conditions or evaluations for new or different treatments. Instead, the Hearing Officer concluded that Sedgwick had not shown that Provider was not entitled to payment for the office visits because it "did not offer proof, by affidavit or otherwise, *explaining* what is meant by the

4

phrase 'significant and separately identifiable service' under the regulation" or "prove by a preponderance of the evidence that the procedures listed in Provider's bills … include the value of the office visits." (Hearing Officer Decision C.L. ¶4 (emphasis in original).) Sedgwick timely appealed.[2]

Sedgwick argues that Section 127.105 of the Medical Cost Containment Regulations prohibits payment of office visit charges for routine physical examinations and evaluations on the same day as other treatment where there is no new medical condition and that all of Provider's office visit charges were for routine examinations for the same medical conditions.

Section 306(f.1) of the Workers' Compensation Act[3] and the Medical Cost Containment Regulations, promulgated by the Bureau to implement Section 306(f.1), require health care providers to bill for their treatment of workers' compensation claimants in accordance with Medicare procedure codes and limit payment to providers based on Medicare reimbursement rates. 77 P.S. § 531(1), (3)(i), (vii), (viii); 34 Pa. Code §§ 127.1, 127.3, 127.101, 127.103-127.108; *Legion Insurance Co. v. Bureau of Workers' Compensation Fee Review Hearing Office (Ferrara)*, 42 A.3d 1151, 1153-54 (Pa. Cmwlth. 2012); *Liberty Mutual Insurance Co. v. Bureau of Workers' Compensation (Kepko, D.O.)*, 37 A.3d 1264, 1268 (Pa. Cmwlth. 2012). Section 127.105 of the Medical Cost Containment Regulations governs payments to chiropractors and provides:

---

[2] This Court's review of a fee review hearing officer's decision is limited to considering whether necessary factual findings are supported by substantial evidence, whether the hearing officer committed an error of law, and whether any constitutional rights were violated. *Selective Insurance Company of America v. Bureau of Workers' Compensation Fee Review Hearing Office (The Physical Therapy Institute)*, 86 A.3d 300, 302 n.4 (Pa. Cmwlth. 2014). Questions of law are subject to this Court's plenary, *de novo* review. *McNeil v. Workers' Compensation Appeal Board (Department of Corrections, SCI-Graterford)*, 169 A.3d 171, 175 n.4 (Pa. Cmwlth. 2017).

[3] Act of June 2, 1915, P.L. 736, § 306(f.1), *as amended*, 77 P.S. § 531.

(e) Payment shall be made for an office visit provided on the same day as another procedure only when the office visit represents a significant and separately identifiable service performed in addition to the other procedure. The office visit shall be billed under the proper level HCPCS [Medicare coding system] codes 99201--99215, and shall require the use of the procedure code modifier "-25" (indicating a Significant, Separately Identifiable Evaluation and Management Service by the Same Physician on the Day of a Procedure).

34 Pa. Code § 127.105(e) (emphasis added).  All of the office visits at issue here were on the same day that Provider performed and billed for another procedure. Thus, under Section 127.105(e), Provider is entitled to payment for the office visits only if the office visit examinations constituted "a significant and separately identifiable service" beyond the other procedures that he performed on those dates.

The burden was on Sedgwick to prove by a preponderance of the evidence that it fully paid Provider the amounts to which Provider was entitled.  34 Pa. Code § 127.259(f); *Ferrara*, 42 A.3d at 1153 n.3; *Kepko*, 37 A.3d at 1271.  The meaning of the phrase "significant and separately identifiable service performed in addition to the other procedure" in Section 127.105(e), however, is a question of law, not an issue of fact. *Commonwealth v. Kerstetter*, 62 A.3d 1065, 1068 n.4 (Pa. Cmwlth. 2013), *aff'd*, 94 A.3d 991 (Pa. 2014); *John XXIII Home v. Department of Public Welfare*, 994 A.2d 636, 644 (Pa. Cmwlth. 2010); *Davis v. Department of Public Welfare*, 776 A.2d 1026, 1029 (Pa. Cmwlth. 2001).  This issue is a question of first impression.  The Medical Cost Containment Regulations do not define any of these terms and no court of this Commonwealth has interpreted Section 127.105(e) or the phrase "significant and separately identifiable service" or "significant and separately identifiable."

Our interpretation of the language of Section 127.105(e) is guided by the rules of statutory construction.  1 Pa. C.S. § 1502(a)(1)(ii) (Statutory

6

Construction Act applies to regulations published in Pennsylvania Code); *Geisinger Health System v. Bureau of Workers' Compensation Fee Review Hearing Office (SWIF)*, 138 A.3d 133, 139 (Pa. Cmwlth. 2016) ("The rules of statutory construction apply to administrative regulations"). We must therefore look to the words used in Section 127.105(e) and construe the regulation so that each word is given effect and not treated as mere surplusage. 1 Pa. C.S. § 1921(a), (b); *Warrantech Consumer Products Services, Inc. v. Reliance Insurance Co. in Liquidation*, 96 A.3d 346, 354 (Pa. 2014); *In re Employees of Student Services, Inc.*, 432 A.2d 189, 195 (Pa. 1981); *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Ketterer)*, 87 A.3d 942, 947-48 (Pa. Cmwlth. 2014); *Coon v. Civil Service Commission for Allegheny County Police and Firemen*, 654 A.2d 241, 244 (Pa. Cmwlth. 1995), *appeal dismissed*, 679 A.2d 1263 (Pa. 1996).

In addition, where a statute or regulation is based on federal statutes or regulations using the same language, it is appropriate to consider federal decisions and regulatory interpretations of the language at issue. *Bockelman Trucking v. Pennsylvania Prevailing Wage Appeals Board*, 30 A.3d 616, 621 (Pa. Cmwlth. 2011); *Department of Labor & Industry, Bureau of Labor Law Compliance v. Stuber*, 822 A.2d 870, 873 (Pa. Cmwlth. 2003), *aff'd*, 859 A.2d 1253 (Pa. 2004); *Gosewisch v. Department of Revenue*, 397 A.2d 1288, 1293 (Pa. Cmwlth. 1979); *see also* 1 Pa. C.S. § 1921(c)(5). Because the Medical Cost Containment Regulations reference and base their billing and payment limitations and requirements on the Medicare limitations and codes and Section 127.105(e) incorporates the Medicare code for same-day patient evaluations, modifier -25, and uses the same language, we look for guidance to federal Medicare case law and agency interpretation of the

7

phrase "significant and separately identifiable service" in construing Section 127.105(e).

Federal Medicare case law and administrative decisions have held, in cases of catheter placements and minor surgical procedures, that an examination or evaluation on the same date as another procedure does not constitute a "significant and separately identifiable service" unless it is above and beyond the usual evaluation performed in conjunction with that procedure or is unrelated to the procedure that was performed on the same day. *United States v. Chen*, (U.S. D. Nevada No. 2:04CV00859–PMPPAL, filed May 30, 2006), 2006 WL 1554546 at *8 (consultations were not for "significant and separately identifiable services" payable under modifier -25 if the patient history, examination, and medical decision-making "were the same services Dr. Chen performed in conjunction with the procedure"); *In re Skin & Cancer Associates*, (H.H.S. Appeals Board, Medicare Appeals Council No. M-11-579, filed March 1, 2012), 2012 WL 1671494 at *2, *4, *6 (evaluation of patient is a "significant and separately identifiable" service that is billable and payable under modifier -25 only if it is "above and beyond the usual preoperative and postoperative work of the procedure" or is unrelated to the procedure); *In re Sheldon Ross, D.P.M.,* (H.H.S. Appeals Board, Medicare Appeals Council No. M-10-996, filed January 12, 2011), 2011 WL 3668252 at *7-*9, *11, *19 (evaluation is a "significant and separately identifiable" service billable and payable under modifier -25 only if patient's condition required evaluation above and beyond the usual preoperative and postoperative work of the procedure, and evaluations in close proximity in time with no significant change in medical condition did not satisfy "significant and separately identifiable" service requirement, but evaluation unrelated to the procedure performed was a "significant and separately identifiable"

8

service).  The Centers for Medicare & Medicaid Services (CMS), the agency that administers the Medicare program, has stated with respect to chiropractors:

> [C]hiropractors will be allowed to bill Medicare for both an E&M [Evaluation and Management] visit and for treatment the first time you assess a patient, as well as for current patients in such instances as when there is a new condition, exacerbation or recurrence of the current condition, or for a reassessment midway through treatment.
> Chiropractors should not bill for an E&M service every time they treat a patient. …
> For example, chiropractic manipulation codes include a brief pre-manipulation patient assessment. Additional E&M services may be reported separately using the modifier "-25" if, and only if, the patient's condition requires a significant separately identifiable E&M service.

MLN Matters No. SE0514 at 3.[4]

We conclude, based on the language of the regulation and the interpretation of the identical Medicare terms that it incorporates, that an examination involving no new medical condition, change in medical condition, or other circumstances that require an examination and assessment above and beyond the usual examination and evaluation for the treatment performed on the same date does not constitute "a significant and separately identifiable service" for which a

---

[4] MLN Matters No. SE0514 is a 2005 CMS publication concerning a demonstration project that permitted chiropractors to bill Medicare for services.  Although Sedgwick did not introduce MLN Matters No. SE0514 in evidence in the fee review proceeding, this Court may take judicial notice of government publications as interpretive tools.  *Taddei v. Department of Transportation, Bureau of Driver Licensing*, 982 A.2d 1249, 1252 (Pa. Cmwlth. 2009) (court properly took judicial notice of American Association of Motor Vehicle Administrators' Code Dictionary published pursuant to federal statute and regulation as an interpretive tool to determine meaning of code in driver's license record); *Hyer v. Department of Transportation, Bureau of Driver Licensing*, 957 A.2d 807, 810 (Pa. Cmwlth. 2008) (same); *Murray Co., v. Commonwealth*, 401 A.2d 412, 413-14 (Pa. Cmwlth. 1979) (*en banc*) (taking judicial notice of Internal Revenue Service instructions concerning taxation of certain dividends in interpreting state corporate income tax provision that based dividend deduction on federal tax status), *aff'd without op.*, 415 A.2d 88 (Pa. 1980).

chiropractor may be paid under Section 127.105(e). The language permitting payment for office visits "only when the office visit represents a significant and separately identifiable service performed in addition to the other procedure," 34 Pa. Code § 127.105(e) (emphasis added), shows a clear intent to make payment for same-day examinations the exception, not the rule. Construing Section 127.105(e) to permit payment of office visit charges for same-day examinations performed on a routine basis without special circumstances unique to the patient's condition or nature of the treatment session would effectively read this limiting language out of the regulation.

Provider argues that the Hearing Officer's decision must be affirmed because he found that Sedgwick did not satisfy its burden of proving that it fully paid Provider. This argument fails, however, because the Hearing Officer made no findings as to the facts on which Sedgwick's liability turned. Instead, the Hearing Officer erroneously treated the legal issue of when an examination constitutes "a significant and separately identifiable service" as a factual issue and made no findings as to the nature of and reasons for the examinations from which a ruling could be made as to whether they satisfy the requirements of Section 127.105(e). Provider's affidavit, which the Hearing Officer found credible, does not provide any facts concerning changes in Claimant's medical condition or set forth any circumstances that required an examination and assessment above and beyond the usual examination and evaluation for the treatments that Provider performed that would permit a determination that any of the examinations constituted "a significant and separately identifiable service." To the contrary, Provider's statement that he performed the same examination and evaluation "[e]ach time I treat [Claimant]," (Provider Ex. 1, R.R. at 795a), would support the conclusion that the examinations

were purely routine. Moreover, Sedgwick did not fail to introduce sufficient evidence to sustain its burden of proof. Provider Notes for all of the office visits were introduced in evidence and those notes set forth Claimant's condition at the time of the treatment, Provider's examination and assessment of Claimant, and the treatment that Provider performed on those dates, from which the necessary factual findings can be made concerning the nature of and need for the examinations. (Provider's Treatment Notes, R.R. at 154a-158a, 217a-223a, 277a-280a, 328a-330a, 373a, 419a-420a, 547a, 585a-588a, 606a-609a, 654a-661a.)[5]

Sedgwick's request that this Court order the dismissal of Provider's claims for the 39 office visit charges likewise fails. While the question of what constitutes "a significant and separately identifiable service" is an issue of law, whether Provider is entitled to payment for the office visits also involves issues of fact concerning the examinations, Claimant's medical condition, and Provider's treatments. Such factual determinations are for the fee review hearing officer to make as the finder of fact, and are not the province of this Court. *Jaeger v. Bureau of Workers' Compensation Fee Review Hearing Office (American Casualty of Reading c/o CNA)*, 24 A.3d 1097, 1101 (Pa. Cmwlth. 2011).

---

[5] Neither of the prior decisions introduced in evidence by the parties is relevant to the issue of whether the office visits here are "significant and separately identifiable" services under 34 Pa. Code § 127.105(e). Contrary to Provider's assertions, the 2014 WCJ utilization review decision held only that Provider's chiropractic treatments were reasonable and necessary (2014 Utilization Review Decision C.L. ¶¶2-3 & Order, R.R. at 811a, 813a), and did not discuss whether Provider's examinations of Claimant on each visit were reasonable or necessary or discuss office visit charges for such examinations. The 2015 fee review decision held that office visit charges billed by Provider in 2013 and 2014 were not payable (2015 Fee Review Decision F.F. ¶15e, C.L. ¶4, & Order, R.R. at 761a, 763a, 765a), and did not involve any of the office visits here. The fact that a fee review hearing officer rejected claims for those other office visits does not constitute a basis for collateral estoppel or prove anything concerning the examinations at issue here, which may involve different facts concerning Claimant's medical condition or treatment. *Kepko*, 37 A.3d at 1269-70 & n.13.

11

For the foregoing reasons, we vacate the Hearing Officer's order and remand this matter to the Bureau of Workers' Compensation Fee Review Hearing Office for a determination as to whether the examinations for which Provider seeks payment of office visit charges were conducted because of a new medical condition, change in medical condition, or other special circumstances that required an examination and assessment above and beyond the usual examination and evaluation for the treatment that Provider performed on those dates.

_____
JAMES GARDNER COLINS, Senior Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sedgwick Claims Management : 
Services, Inc., : 
                    : 
        Petitioner : 
                    : 
        v. : No. 1033 C.D. 2017
                    : 
Bureau of Workers' Compensation : 
Fee Review Hearing Office (Piszel and : 
Bucks County Pain Center), : 
                    : 
        Respondent : 

## O R D E R

AND NOW, this 11th day of April, 2018, the July 5, 2017 order of the Bureau of Workers' Compensation fee review hearing officer in the above matter is VACATED. This matter is REMANDED to the Bureau of Workers' Compensation Fee Review Hearing Office for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
JAMES GARDNER COLINS, Senior Judge