IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Solid Waste Services, Inc. d/b/a :
J. P. Mascaro & Sons and :
Inservco Insurance Services, Inc., :
    Petitioners :
:
  v. : No. 69 C.D. 2022
:
St. Luke's Hospital (Bureau of :
Workers' Compensation), :
    Respondent : Submitted: March 6, 2023

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ELLEN CEISLER, Judge
     HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER         FILED: April 25, 2023

   Solid Waste Services, Inc., d/b/a J. P. Mascaro & Sons (Employer), and Inservco Insurance Services, petition this Court for review of the January 6, 2022 Order of a Bureau of Workers' Compensation (Bureau) Fee Review Hearing Officer (Hearing Officer) affirming an administrative decision by the Bureau's Medical Fee Review Section (Fee Review Section), which directed that Employer pay St. Luke's Hospital (St. Luke's) $1,342,419.85, plus statutory interest. Employer argues that the Hearing Officer erred in affirming the administrative decision because St. Luke's' petition for fee review was prematurely filed, that the Hearing Officer denied Employer its right to due process by limiting the evidence Employer could present at trial, and that the definitions of "life-threatening injury" and "urgent

injury" contained in Section 109 of the Workers' Compensation Act (Act)[1] are unconstitutional under article II, section 1 of the Pennsylvania Constitution.[2] After review, we affirm.

## I. Background

The underlying facts in this matter are largely undisputed. Carlos Soto (Claimant) sustained a work injury on October 13, 2020, which Employer accepted through issuance of a Notice of Compensation Payable (NCP). Supplemental Record (S.R.). The NCP described Claimant's work injury as consisting of "multiple head fractures" and a right leg injury. *Id.* Due to the severity of Claimant's injuries, Claimant was taken to St. Luke's, a Level I trauma center, where he received in-patient treatment for 31 days. S.R., Notes of Testimony (N.T.), 4/29/21, at 8. On November 17, 2020, St. Luke's sent Employer an itemized bill for Claimant's treatment in the amount of $1,342,419.85. Reproduced Record (R.R.) at 347a-48a. The bill from St. Luke's indicated that Claimant received "trauma[-]related services performed at a designated trauma site[,]" and that the expected payment, "according to regulations[,] is 100% of charges."[3] *Id.* Employer received

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of July 2, 1993, P.L., 190, 77 P.S. § 29.

[2] Article II, section 1 of the Pennsylvania Constitution provides that '[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." PA. CONST. art. II, § 1.

[3] Pursuant to Section 306(f.1)(10) of the Act, added by the Act of July 2, 1993, P.L. 190, "[i]f acute care is provided in an acute care facility to a patient with an immediately life threatening or urgent injury by a Level I or Level II trauma center," then "the amount of payment shall be the usual and customary charge." 77 P.S. § 531(10). A provider's "usual and customary charge" is defined in Section 109 of the Act as "the charge most often made by providers of similar training,

**(Footnote continued on next page…)**

2

the bill from St. Luke's in a timely manner but failed to pay it within 30 days, as required under Section 306(f.1)(5) of the Act and Section 127.208(a) of the MCC.[4] *Id.* at 68a; N.T., 4/29/21, at 10. On January 21, 2021, St. Luke's filed an application for fee review based on Employer's failure to respond. R.R. at 1a-2a.

On February 16, 2021, the Fee Review Section issued an administrative decision, which determined that Employer was untimely in paying the bill from St. Luke's and that St. Luke's was due $1,342,419.85, plus interest. R.R. at 6a. The administrative decision advised Employer that it could contest the decision by requesting a *de novo* hearing. *Id.* Employer filed its request for a hearing to contest the Fee Review Section's administrative decision on February 22, 2021, asserting that St. Luke's had not charged "the usual and customary rate[,]" that some charges were not trauma-related, and that Section 306(f.1)(10) of the Act, 77 P.S. § 531(10), was unconstitutional.[5]

During an April 29, 2021 hearing before the Hearing Officer, Employer acknowledged that it was self-insured for purposes of workers' compensation, with

---

experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided." 77 P.S. § 29. Section 306(f.1)(10) thus creates an exception to the general rule that "medical fees for services rendered under the act shall be capped at 113% of the Medicare reimbursement rate." *See* Section 127.101(a) of the Medical Cost Containment regulations (MCC) promulgated by the Department of Labor and Industry (Department), 34 Pa. Code § 127.101(a).

[4] Section 306(f.1)(5) of the Act requires that, unless an employer or insurer disputes the reasonableness or necessity of the treatment provided to an injured employee, payment "shall be made" to the provider within 30 days of receipt of the bill. 77 P.S. § 531(5). Section 127.208(a) of the MCC provides that "[p]ayments for treatment rendered under the act shall be made within 30 days of receipt of the bill and report submitted by the provider." 34 Pa. Code § 127.208(a).

[5] The issue of whether St. Luke's billed Employer for non-trauma-related care is not before this Court.

3

Inservco acting as Employer's third-party claims administrator, and that Employer was ultimately responsible for paying Claimant's medical bills. S.R., N.T., 4/29/21, at 6. Employer did not dispute that Claimant suffered a life-threatening work injury that required acute treatment at a trauma center. *Id.* at 7. Rather, Employer questioned the "staggering amount" of the bill and whether Employer had been invoiced the usual and customary charges for services within the geographic area. *Id.* at 8, 10. Therefore, Employer requested the opportunity to conduct discovery for the purpose of determining the accuracy of St. Luke's' bill. Employer conceded that it bore the burden of proving that the amounts billed by St. Luke's were "not usual and customary[.]" *Id.* at 13, 23. The Hearing Officer recognized that Employer raised a constitutional challenge to Section 306(f.1) but indicated that he lacked jurisdiction to resolve the issue. *Id.* at 15. St. Luke's objected to a delay of proceedings to allow discovery, as Employer already had several months to request additional information regarding the outstanding bill. *Id.* at 16. Ultimately, the Hearing Officer agreed to schedule a "final hearing" for September 2, 2021, at which the parties would submit "all evidence[.]" *Id.* at 27.

In July 2021, Employer submitted several subpoena requests to the Hearing Officer, seeking the following: (1) billing information for every patient at St. Luke's who received trauma-related services for the period of October 1, 2019, through October 1, 2020; (2) copies of the charge master listing[6] for St. Luke's, as well as Reading Hospital in West Reading, Pennsylvania, Lehigh Valley Hospital in Allentown, Pennsylvania, and Geisinger Medical Center in Danville, Pennsylvania, which Employer asserted were located within the same geographic area as St.

---

[6] A charge master is "[a] provider's listing of current charges for procedures and supplies utilized in the provider's billing process." Section 127.3 of the MCC, 34 Pa. Code § 127.3.

Luke's; and (3) a report detailing the "maximum negotiated payments/rates" received by St. Luke's and the aforementioned area hospitals for the medical services and treatment Claimant received. R.R. at 23a-92a. St. Luke's objected to the subpoena requests as overbroad and seeking information that was irrelevant to the issue of whether St. Luke's invoiced Employer its usual and customary charges for Claimant's medical treatment. *Id.* at 93a. St. Luke's also challenged whether the other hospitals identified by Employer were within St. Luke's' geographic region. *Id.*

Oral argument on Employer's subpoena requests took place on August 5, 2021, during which Employer argued that payment for acute care should be "usual and customary . . . not a hundred percent of what [St. Luke's] charged[,] and that Employer should not "have to just take what St. Luke's says is" its usual and customary charge. *Id.* at 106a-07a. Instead, Employer reasoned, the usual and customary charge should reflect the discounted rates negotiated between St. Luke's and insurers. *Id.* at 134a-35a. St. Luke's argued that information regarding the rates negotiated with unrelated parties was irrelevant to the issue of whether Employer had paid the outstanding bill from St. Luke's. *Id.* at 119a. At a subsequent hearing held on August 30, 2021, the Hearing Officer ruled that Employer's subpoena requests were overbroad and sought proprietary billing information that was not relevant to the issue before him. *Id.* at 197a, 219a. Accordingly, the Hearing Officer limited the scope of Employer's subpoena requests for Reading Hospital and Lehigh Valley Hospital to the charge master listings for the services and treatment St. Luke's provided to Claimant. *Id.* at 198a. Additionally, the Hearing Officer quashed the subpoena request for Geisinger Medical Center's charge master listing on the basis

5

that it was located outside the geographic area of St. Luke's. *Id.* at 199a. A final hearing on the matter was rescheduled for November 18, 2021. *Id.* at 213a.[7]

At the November 18, 2021 hearing, Employer sought to present the testimony of Gregory Fox, Employer's Senior Corporate Counsel. R.R. at 272a. Employer asserted that Mr. Fox oversaw Employer's workers' compensation "program," and he was therefore familiar with "trauma bills and whether they were properly billed in accordance with the Act and [the Department's] regulations[.]" *Id.* at 279a. Therefore, Mr. Fox's testimony was necessary to establish that the charges invoiced by St. Luke's were not the usual and customary charges. *Id.* The Hearing Officer declined to allow Mr. Fox's testimony on the basis that it was irrelevant to any question at issue, and he would not allow Mr. Fox to "sit here and [testify that] he's reviewed the bill and he gives his opinion as a corporate lawyer that he doesn't think the charges are reasonable and necessary or usual and customary." *Id.* at 282a. The Hearing Officer noted that Employer had "a year to garner and marshal [its] evidence[,]" during which Employer could have retained an independent expert to analyze the bill from St. Luke's and whether it contained the usual and customary charges for services within the geographic area. *Id.*

Employer also sought to call Patricia Cope, St. Luke's' business administrator, for the purpose of cross-examination on the issue of "reasonable[,]

_____

[7] The Hearing Officer issued an interlocutory order on August 31, 2021, that formalized the ruling made during the August 30, 2021 hearing. R.R. at 227a. The August 31, 2021 interlocutory order quashed the subpoena request as to Geisinger Medical Center on the basis that facility was not within the geographic location of St. Luke's. *Id.* The scope of Employer's subpoenas to Reading Hospital, Lehigh Valley Hospital, and St. Luke's was limited to the usual and customary costs and charging information for the "same type of treatment" provided to Claimant. Employer's subpoena requests were quashed to the extent Employer sought any "proprietary, privileged information" regarding negotiated payments or payment arrangements made within third-party payors. *Id.*

usual[, and] customary charge[.]" *Id.* at 290a. The Hearing Officer did permit a brief cross-examination of Ms. Cope, during which Ms. Cope stated that she "[did] not have anything to do with [St. Luke's'] charge master[,]" but that she understood it contained the "hospital charges for each of [St. Luke's'] departments." *Id.* at 299a-300a. Ms. Cope acknowledged that St. Luke's' online charge master listing indicated that it did not contain the negotiated price between hospitals and third-party payors[,]" or "the price that most patients would pay for care." *Id.* at 305a. Ms. Cope stated that St. Luke's bills "the same charges across the board[,]" but the amounts St. Luke's received "depend[ed] on the contract." *Id.* at 306a.

In a decision issued on January 6, 2022, the Hearing Officer affirmed the Fee Review Section's administrative decision and ordered Employer to pay St. Luke's $1,342,419.85, plus interest. Employer's Br., App., Hearing Officer's Decision at 12. The Hearing Officer found that Claimant's injuries were sufficiently life threatening and urgent to warrant treatment at St. Luke's. *Id.*, Finding of Fact (F.F.) No. 4. The Hearing Officer further found that Employer failed to present any evidence to support its argument that St. Luke's billed "anything other than the 'usual and customary' charges for [trauma-related treatment] in the geographical region in which St. Luke's is situated." F.F. No. 14. Regarding Employer's constitutional challenge to Section 306(f.1)(10) of the Act, the Hearing Officer found that it was "wholly undeveloped on the instant record." F.F. No. 18. Furthermore, despite having six months in which to conduct discovery and develop its case, Employer failed to present any witness testimony or evidence that the charges invoiced by St. Luke's were analyzed and compared to charges for similar services provided by other trauma centers within St. Luke's' geographic region. F.F. Nos. 19, 21(e). Ultimately, St. Luke's rendered care to Claimant, who suffered life-

threatening and urgent injuries while in the course of his employment. Hearing Officer's Decision at 8. St. Luke's sent Employer a bill for services rendered to Claimant, which Employer failed to pay within 30 days. *Id.* at 8-9. Pursuant to Section 127.128(a) of the MCC, treatment for life-threatening and urgent injuries are exempt from the fee caps otherwise established in the MCC. *Id.* at 8. Accordingly, as Employer failed to "present any competent, cogent[,] and comprehensive evidence of the usual [and] customary charges for a month of trauma care in the geographic area of St. Luke's," or that the charges invoiced by St. Luke's "exceed[ed] the usual [and] customary charges for a month of trauma services in the geographic area surrounding St. Luke's[,]" the Hearing Officer concluded that St. Luke's was entitled to reimbursement, as ordered by the Fee Review Section in its administrative decision. *Id.*, Conclusions of Law Nos. 6-7. This appeal followed.[8]

## II. Issues

On appeal,[9] Employer argues that St. Luke's' petition for fee review was premature because Employer never received what it considered a "proper bill." Employer's Br. at 29. Employer also argues that the Hearing Officer denied

---

[8] After filing its petition for review with this Court, Employer filed an Application for Stay/Supersedeas of the Hearing Officer's decision and order, which we denied by order dated March 23, 2022. Employer's subsequent Application for Reargument of this Court's March 23, 2022 order was likewise denied on May 2, 2022. Employer's second Application for Stay/Supersedeas of the Hearing Officer's decision and order, which it filed on May 25, 2022, was denied by the Supreme Court in a September 8, 2022 order. *See Solid Waste Mgmt. Servs., Inc., d/b/a Mascaro & Sons and Inservco Ins. Servs., Inc. v. St. Luke's Hosp. (Bureau of Workers' Comp.)* (Pa., No. 30 E.M. 2022, filed Sept. 9, 2022).

[9] Our review is limited to determining whether the Hearing Officer's findings are supported by substantial evidence and whether the Hearing Officer erred as a matter of law or violated Employer's constitutional rights. *Roman Cath. Diocese of Allentown v. Bureau of Workers' Comp., Fee Review Hearing Office (Lehigh Valley Health Network)*, 33 A.3d 691, 696 n.5 (Pa. Cmwlth. 2011).

Employer its right to due process by limiting the scope of Employer's subpoenas and the presentation of witness testimony at trial, and that the definitions of "life-threatening injury" and "urgent injury" contained in Section 109 of the Act are unconstitutional under article II, section 1 of the Pennsylvania Constitution.

## III. Discussion

### A. Timeliness of Application for Fee Review

Generally, fees for medical services provided under the Act are capped at 113% of the Medicare reimbursement rate applicable in the Commonwealth. 34 Pa. Code § 127.101(a). Acute care provided by a trauma center is exempt from such medical fee caps, however, pursuant to Section 306(f.1)(10) of the Act, 77 P.S. § 531(10), and Section 127.128(a) of the MCC regulations, 34 Pa. Code § 127.128(a). Per Sections 306(f.1)(10) and 127.128(a), charges for acute care "shall be paid based on 100% of usual and customary charges." 34 Pa. Code § 127.128(a). Notably, "usual and customary charges" does not mean the *actual* charges stated on the bill. Rather, a provider's "usual and customary charge" for purposes of Section 127.128(a) is defined in Section 109 of the Act, 77, P.S. § 29, as the "charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service, in the geographic area where the treatment, accommodation, product[,] or service is provided. *Geisinger Health Sys. v. Bureau of Workers' Comp. Fee Rev. Hearing Off.*, 138 A.3d 133, 140 (Pa. Cmwlth. 2016). An insurer may calculate the usual and customary charges by comparing the provider's full charges with those of other accredited trauma care centers in the same geographic region, and reimburse at that recalculated amount. *Allegheny Gen. Hosp. v. Bureau of Workers' Comp. Fee Rev. Hearing Off.*, 143 A.3d 449, 459 (Pa. Cmwlth. 2016).

Section 306(f.1)(5) of the Act provides that an insurer "shall make payment" and a provider "shall submit bills and records" as provided. Pursuant to Section 127.205 of the MCC regulations, a bill submitted for payment "shall state the provider's actual charges for the treatment rendered." 34 Pa. Code § 127.205. A provider's "actual charge" is defined in Section 127.3 of the MCC regulations as the "usual and customary charge for a specific treatment, accommodation, product[,] or service." 34 Pa. Code § 127.3. The "usual and customary charge" is defined as "[t]he charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided." *Id.* The insurer to whom the bill is submitted "shall calculate the proper amount of payment for the treatment rendered." 34 Pa. Code § 127.205.

Unless the insurer disputes the reasonableness or necessity of the treatment provided, payment to a provider "shall be made" within 30 days of receipt of the bill. 77 P.S. § 531(5). While an insurer may request additional information or records from a provider, the request may not extend the 30-day period in which payment shall be made to the provider, and the 30-day period may be tolled only if an insurer has requested review of the reasonableness or necessity of the treatment. 34 Pa. Code § 127.208(c), (e). Thereafter, if the insurer has not disputed the reasonableness and necessity of an injured worker's treatment, a provider may file an application for fee review for the purpose of disputing the amount or timeliness of an insurer's payment. *Id.* The provider's fee review application must be filed within 90 days of the original billing date. *Id.*

There is no dispute that Claimant received acute care pursuant to Section 306(f.1)(10) of the Act and Section 127.128(a) of the MCC regulations, and

Employer does not deny that it failed to pay the bill it received from St. Luke's within 30 of its receipt thereof or that it failed to contest the reasonableness or necessity of Claimant's treatment within the 30-day time frame. Employer asserts, however, that the 30-day period for paying St. Luke's was never triggered because St. Luke's failed to send Employer a "proper bill." Employer's Br. at 29. In Employer's view, the bill it received from St. Luke's was deficient because the amounts set forth therein were not the "usual and customary charges" St. Luke's would normally receive for the services provided, which Employer suggests are "the charges that [the provider] *actually receives* for such services to the highest degree of frequency." *Id.* at 13, 17 (emphasis added). Employer argues that St. Luke's is therefore obligated to state on its bill the amounts that it has "negotiated with other patients, health insurance companies, self-insured employers, or workers' compensation insurance companies to pay for the services in question in the past." *Id.* at 19.

We must reject Employer's argument that the bill from St. Luke's was somehow improper, or that the 30-day period for paying the bill never commenced. While Employer asserts that it did not pay the bill from St. Luke's because it believed that the bill did not contain the requisite usual and customary charges, Employer provides no basis for its belief, nor does it appear that Employer made any attempt to identify the correct amounts within 30 days of receiving the bill from St. Luke's, as provided in Section 127.205 of the MCC regulations. Moreover, as the record demonstrates and the Hearing Officer found, Employer had several months in which to develop its case and it failed to do so. Instead, Employer continued to argue, without evidentiary or legal support, that St. Luke's should have billed Employer the discounted amounts it would have received from a third-party payor. Furthermore,

11

despite accepting liability for Claimant's work injury and acknowledging that it was responsible for paying his medical bills, Employer has failed to pay any portion of the bill received. Instead, "as Employer had no way of determining the proper amount to pay[,]"[10] it ignored the bill entirely.

Section 306(f.1)(10) of the Act states unambiguously that payment for acute care shall be the "usual and customary charge[,]" which is defined in Section 109 of the Act to be "the charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided." 77 P.S. § 531(10); 77 P.S. § 109. The relevant provisions of the Act and the MCC regulations specify that a provider's bill must contain its "actual charges," which are the charges made by similar providers within the geographic area. 34 Pa. Code §§ 127.3, 127.205. There is no requirement that a provider invoice the amounts it "actually receives" for the services rendered or that which has been "negotiated with other patients, health insurance companies, self-insured employers, or workers' compensation insurance companies to pay for the services in question in the past." Employer's Br. at 19. The legal provisions Employer cites in support of its proposed definition of "usual and customary charges" do not require the information Employer demands.[11] As Employer's argument is utterly without

---

[10] Employer's Br. at 19.

[11] The first provision cited by Employer is Section 109 of the Act's definition of "usual and customary charge" as "the charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided." 77 P.S. § 29. The second is the definition of "actual charge," provided in the MCC regulations, as the "provider's usual and

**(Footnote continued on next page…)**

12

foundation, we see no justification for simply ignoring the bill it received for Claimant's life-saving treatment.

An application for fee review is premature where the insurer has denied liability for the work injury, the insurer has filed a request for utilization review to determine the reasonableness and necessity of treatment, or 30 days have not elapsed from the date the insurer received the provider's bill. 34 Pa. Code § 127.255. Employer accepted liability for Claimant's injury through issuance of an NCP on October 28, 2020. St. Luke's submitted its bill to Employer on November 17, 2020. Employer neither paid the bill within 30 days, as required by Section 306(f.1)(5) of the Act, nor challenged the reasonableness or necessity of Claimant's treatment pursuant to Section 306(f.1)(6) of the Act. Thereafter, St. Luke's filed its application for fee review on January 21, 2021, seeking a determination as to the "amount and timeliness" of its bill. 34 Pa. Code § 127.251. Based on the above, none of the conditions that would render St. Luke's' fee review application premature under Section 127.255 of the MCC regulations are present. Accordingly, we conclude that St. Luke's' application for fee review was timely filed.

## B. Employer's Due Process Rights

Next, we address whether the Hearing Officer denied Employer its right to due process[12] by limiting the scope of Employer's subpoenas and precluding the testimony of certain witnesses. Employer argues that Hearing Officer erred in rejecting Employer's attempt to subpoena information that would have established

---

customary charge for a specific treatment, accommodation, product or service." 34 Pa. Code § 127.3.

[12] The basic elements of procedural due process are adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction of the case. *Lawson v. Pa. Dep't of Pub. Welfare*, 744 A.2d 804, 806 (Pa. Cmwlth. 2000).

the amounts St. Luke's "most often made" for the treatment it provided to Claimant, including any billing rates negotiated between St. Luke's and other area hospitals and third-party payors. Employer contends that, by denying Employer access to such information, it was prevented from demonstrating that St. Luke's billed Employer its usual and customary charges. Additionally, Employer argues that the Hearing Officer improperly precluded the testimony of Mr. Fox, who would have testified as to whether the bill from St. Luke's represented the usual and customary charges for "services in the geographic area[.]" Employer's Br. at 41. Employer similarly challenges the Hearing Officer's decision to preclude Employer from questioning Ms. Cope regarding the amounts St. Luke's billed third-party payors for services similar to those it provided to Claimant and whether those third-party payors "would have paid a lesser amount than Employer[.]" *Id.*

St. Luke's responds that Employer's argument confuses negotiated reimbursement rates with the charges that form the basis for those rates. St. Luke's argues that payments received from a third-party payor are not relevant to the issue of whether St. Luke's billed Employer its usual and customary charges under the Act, or to the amount and timeliness of Employer's payment to St. Luke's, which St. Luke's notes was "$0.00[.]" St. Luke's Br. at 15.

The fee review process is designed to have a very narrow scope that is limited to determining the "relatively simple matters" of the amount or timeliness of an insurer's payment for medical treatment. *Crozer Chester Med. Ctr. v. Bureau of Workers' Comp., Health Care Servs. Rev. Div.*, 22 A.3d 189, 198 (Pa. 2011). An insurer is responsible for calculating the proper amount of payment for treatment rendered by a provider. *Liberty Mut. Ins.Co. v. Bureau of Workers' Comp., Fee Rev. Hearing Off.*, 37 A.3d 1264, 1269 (Pa. Cmwlth. 2012).

14

Instantly, the Hearing Officer ruled that the requested subpoenas were overbroad and not tailored toward obtaining the "usual and customary charges" for "the type of treatment [Claimant] received." Hearing Officer Decision, F.F. Nos. 22-23. Regarding the request to let Mr. Fox testify, the Hearing Officer determined that his testimony, too, would have done nothing to establish St. Luke's usual and customary charges. *Id.*, No. 25. Furthermore, the Hearing Officer did permit limited cross-examination of Ms. Cope, whose testimony simply established that she was not involved with developing or maintaining St. Luke's' charge master listing and that third-party payors did not generally pay the amounts set forth in charge master. Section 127.259(b) of the MCC regulations provides that a hearing officer shall receive "[a]ll relevant evidence of reasonably probative value" and that "[r]easonable examination and cross-examination of witnesses will be permitted." 34 Pa. Code § 127.259(b). The purpose of the fee review hearing conducted by the Hearing Officer was limited to determining whether any payment was due from Employer, and Employer bore the burden of proving by a preponderance of the evidence that it properly reimbursed St. Luke's. *Philadelphia Surgery Ctr. v. Excalibur Ins. Mgmt. Servs., LLC*, 289 A.3d 157, 162 (Pa. Cmwlth. 2023). As the evidence Employer sought would not have furthered the fee review hearing's purpose, the Hearing Officer did not err in precluding Employer from obtaining or presenting that evidence. Employer accordingly suffered no deprivation of its due process rights.

### C. Unconstitutional Delegation of Legislative Authority

Finally, we address Employer's argument that the so-called trauma exception in Section 306(f.1)(10) of the Act and Section 127.128(a) of the MCC regulations is

an unconstitutional delegation of legislative authority.[13]  Employer bases its arguments on the definitions of "life-threatening injury" and "urgent injury" contained in Section 109 of the Act, which provides that the terms are to be "defined by the American College of Surgeons' [ACS] triage guidelines regarding use of trauma centers for the region where the services are provided."  77 P.S. § 29.  By relying on triage guidelines established by the ACS, Employer suggests that the General Assembly has delegated its legislative authority to that entity, without prescribing any standards to guide the ACS's determinations.  In support of its argument, Employer cites *Protz v. Workers' Compensation Appeal Board (Derry Area School District.)*, 161 A.3d 827, 833 (Pa. 2017).

In *Protz*, the Supreme Court held that former Section 306(a.2) of the Act,[14] which provided that a claimant's impairment rating evaluation (IRE) be determined using the "most recent edition" of the American Medical Association's Guides to the Evaluation of Permanent Impairment (AMA Guides), was an unconstitutional delegation of the legislative authority to a private body, as it adopted, sight unseen, all future editions of the AMA Guides. *Id.* at 832, 841.  Instantly, Employer argues that the "[t]rauma [e]xception" should suffer the same fate as former Section 306(a.2) of the Act.  Although Employer's constitutional challenge addresses the trauma exception generally, Employer does not suggest that either Section 306(f.1)(10) of the Act or Section 127.128(a) of the MCC regulations impermissibly delegates legislative authority.  Rather, Employer's objections appear to focus on

---

[13] Lackawanna Casualty Company and Laundry Owners Mutual Liability Insurance Association, as *amici curiae*, have also submitted a brief in support of Mascaro's argument on this issue.

[14] Added by the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, repealed by the Act of October 24, 2018, P.L. 714.

the definitions of "life-threatening injury" and "urgent injury" contained in Section 109 of the Act.[15]

In response, St. Luke's argues that Employer lacks standing to challenge the definitions of "life-threatening injury" or "urgent injury" because (1) the ACS has not changed its triage guidelines or standards in that regard and (2) Employer cannot demonstrate that Claimant's injuries were anything but life-threatening and urgent. St. Luke's Br. at 17-18. St. Luke's asserts that Employer's constitutional argument is merely "a distraction from the fact that Employer blatantly and without justification denied payment for [Claimant's] care because it was expensive." *Id.* at 18.

"The traditional concept of standing focuses on the idea that a person who is not adversely impacted by the matter he seeks to challenge does not have standing to proceed with the court system's dispute resolution process." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 659 (Pa. 2005) (internal citations omitted). The requirement that a party have standing to bring an action arises from the principle that judicial intervention is only appropriate where the underlying controversy is real and concrete; therefore, a controversy is only worthy of judicial review if the individual initiating the action has been aggrieved. *Id.* at 659-60. A party is aggrieved if it can establish a substantial, direct, and immediate interest in the outcome of litigation. *Id.* at 660. An interest is "substantial" if it surpasses the common interest of all citizens in procuring obedience to the law. *Id.* A "direct" interest requires a showing that the matter complained of caused harm to the party's interest and that a causal connection exists between the harm and the violation of the

---

[15] Presumably, Employer also finds fault with the identical definitions of "life-threatening injury" and "urgent injury" in Section 127.3 of the MCC regulations. 34 Pa. Code § 127.3.

law. *Id.* Finally, an interest is "immediate" if the causal connection is not remote or speculative and the party has been negatively impacted in some real and direct fashion. *Id.*

At the outset, we agree with St. Luke's that Employer has not challenged the characterization of Claimant's injuries as life-threatening or urgent, nor has it argued that Claimant's injuries did not warrant treatment at a Level I trauma center. As discussed above, Employer at no point challenged the reasonableness and necessity of Claimant's treatment as provided in Section 306(f.1)(6) the Act. Employer's chief complaint throughout the instant proceedings is that the charges set forth in the bill it received from St. Luke's are not the usual and customary charges for those services within the relevant geographic area. Indeed, Employer issued an NCP accepting liability for Claimant's work-related injuries, with a consequential requirement that Employer render payment under Section 306(f.1) of the Act for Claimant's surgical and medical services. Employer's liability was established irrespective of the ACS's "triage guidelines regarding use of trauma centers[.]" 77 P.S. § 29. Under these circumstances, we are unable to discern how Employer was harmed by the definitions of "life-threatening injury" and "urgent injury" in Section 109 of the Act. In the absence of such harm, Employer has not established a direct interest in this constitutional challenge and, consequently, that it has the requisite standing to test the constitutionality of Section 109. Moreover, beyond its reliance on *Protz*, and general statements that the "trauma exception" was enacted without appropriate policy standards or guidance, Employer has failed to develop its constitutional

18

argument in any meaningful way, particularly with regard to Section 306(f.1)(10) of the Act.[16]

## IV. Conclusion

The fee review petition filed by St. Luke's was not premature and the Hearing Officer did not err in limiting the billing information Employer sought to obtain from hospitals within the geographic area of St. Luke's. Furthermore, Employer lacks standing to raise a constitutional challenge to the terms "life-threatening injury" and "urgent injury" set forth in Section 109 of the Act. Accordingly, we affirm the Hearing Officer.

_____
ELLEN CEISLER, Judge

---

[16] Where an appellate brief fails to develop an issue in a meaningful fashion capable of review, that claim is waived. *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Solid Waste Services, Inc. d/b/a :
J. P. Mascaro & Sons and :
Inservco Insurance Services, Inc., :
    Petitioners :
     :
   v.   : No. 69 C.D. 2022
     :
St. Luke's Hospital (Bureau of :
Workers' Compensation), :
    Respondent :

# **O R D E R**

   AND NOW, this 25ᵗʰ day of April, 2023, the order of the Workers' Compensation Fee Review Hearing Officer in the above-captioned matter, dated January 6, 2022, is hereby AFFIRMED.

        _____
        ELLEN CEISLER, Judge