IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia and          :
PMA Management Corp,              :
                 Petitioners   :
                               :
          v.               : No. 648 C.D. 2024
                               : Argued: March 4, 2025
John Bell (Workers'               :
Compensation Appeal Board),       :
             Respondent   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE STACY WALLACE, Judge (P.)
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE WALLACE                      FILED: April 2, 2025


       The City of Philadelphia (City) and PMA Management Corporation (PMA) (collectively, Employer) petition for review of the April 24, 2024 order (Order) of the Workers' Compensation Appeal Board (Board) affirming the February 9, 2023 decision and order (Decision) of the Workers' Compensation Judge (WCJ) that denied Employer's Review Petition seeking to set aside a Medical-Only Notice of Compensation Payable (Medical-Only NCP). After review, we affirm.

## BACKGROUND

       In June 2022, John Bell (Claimant) notified Employer he was diagnosed with colon cancer, specifically intra-mucosal adenocarcinoma, after serving as a City

firefighter for 17 years. Reproduced Record (R.R.) at 10.[1] Claimant believed his occupational exposure to carcinogens caused his cancer, and he requested Employer recognize his cancer as job-related and pay workers' compensation benefits. *Id.* On September 26, 2022, Employer issued a Medical-Only NCP indicating Claimant sustained a work-related injury in the nature of colon cancer. *Id.* at 46, 75. On October 6, 2022, Employer filed a Review Petition alleging it mistakenly issued the Medical-Only NCP when it intended to issue a Notice of Compensation Denial. *Id.* at 6-8.

The WCJ held a hearing on November 14, 2022, and accepted evidence regarding whether she should set aside the Medical-Only NCP. In support of its Review Petition, Employer submitted an affidavit from Sharolyn Murphy (Murphy), the City's Risk Management Counsel and Employee Disability Manager. *Id.* at 10-11. In her position, Murphy reviews compensability recommendations from PMA on the City's injury claims, including occupational disease claims. *Id.* at 10. She explained that after she received Claimant's letter, she instructed PMA to open a claim and conduct an investigation. *Id.* She noted Claimant completed the required questionnaire and medical records authorization. *Id.* at 11. After obtaining the records and conducting an investigation, PMA recommended to Murphy that Claimant's claim be denied. *Id.* However, Murphy later received notification that the Medical-Only NCP had been generated. *Id.* Murphy did not intend for the Medical-Only NCP to issue and expected a Notice of Compensation Denial to issue. *Id.*

Employer also submitted an affidavit from Kira Purdy, PMA's Claims Associate (Adjuster). Adjuster began working for PMA on June 6, 2022, and she

---

[1] Because the reproduced record is not paginated, we refer to electronic pagination for ease of reference.

2

started processing workers' compensation claims on June 27, 2022. *Id.* at 13. In August 2022, Adjuster began reviewing Pennsylvania claims, and on September 12, 2022, she received Claimant's claim. *Id.* at 13-14. After reviewing Claimant's case, Adjuster contacted Murphy and advised her that PMA recommended denying Claimant's claim because there was no evidence of a causal relationship between Claimant's condition and his employment as a firefighter. *Id.* at 14. Adjuster explained that at the time she was handling Claimant's claim, she understood PMA's Claims Center software allowed compensability choices of fully accept, temporarily accept, undetermined, partially deny, and fully deny, but she did not understand the Electronic Data Interchange (EDI)[2] system's process or the automatic generation of compensability-establishing documents through these choices. *Id.* Adjuster stated she chose "partially deny" in PMA's Claims Center software but did not realize it would trigger paperwork indicating acceptance of Claimant's medical-only claim or the generation of the Medical-Only NCP. *Id.* Adjuster indicated that at the time the documents were generated, she had no intention of accepting the claim. *Id.* She explained that she chose to "partially deny" the claim because she believed she was agreeing to pay for only the medical appointments to any posted panel physician, and she "did not truly appreciate the significance of its impact on the form generated

---

[2] EDI is the "computer-to-computer exchange of standard business data between companies and the Commonwealth of Pennsylvania. Generally used within the workers' compensation insurance community to exchange accident, payment, insurance and medical information, EDI permits the transfer of large volumes of information more efficiently and accurately than in paper form." Electronic Data Interchange, *available at* https://www.pa.gov/agencies/dli/programs-services/workers-compensation/workers--compensation-claim/electronic-data-interchange.html (last visited April 1, 2025). EDI is available through the Pennsylvania Workers' Compensation Automation and Integration System (WCAIS), which facilitates the management of workers' compensation claims. Pennsylvania Workers' Compensation Automation and Integration System, *available at* https://www.pa.gov/agencies/dli/programs-services/workers-compensation/wcais.html (last visited April 1, 2025).

by the Commonwealth of Pennsylvania's workers' compensation system." *Id.* Adjuster claimed she made a mistake by selecting "partially deny" because she never intended to accept any liability on the claim and did not intend to generate the Medical-Only NCP. *Id.* Nevertheless, by selecting "partially deny," she generated the Medical-Only NCP.

As further evidence, Employer submitted the September 15, 2022 electronic mail (email) exchange between Adjuster and Murphy. *Id.* at 17-18. In those emails, Adjuster recommended a denial of Claimant's claim, and, in response, Murphy agreed with the denial. *Id.*

After reviewing the submitted evidence, the WCJ issued her Decision finding Claimant provided notice of his claim on June 29, 2022, and Employer issued the Medical-Only NCP approximately 90 days later. *Id.* at 23. The WCJ found Adjuster "did not understand the EDI process and chose 'partially deny' within the internal software to ensure payment of any treatment with a panel provider." *Id*. While the WCJ accepted that Adjuster made a mistake and did not intend to generate the Medical-Only NCP, the WCJ was not willing to set aside the Medical-Only NCP. The WCJ explained:

> EDI has been in place for approximately 10 years, [] there should have been better training for [Adjuster] . . . and [Adjuster] should have sought advice from a more senior claims handler or supervisor before taking this action. In fact, [Adjuster] notes in her affidavit that she did review the matter with her supervisor prior to contacting [Murphy]. This [WCJ] notes that [Adjuster] references in her affidavit that on July 25, 2022[,] she began her second phase of her training which involved wage loss claims. She did not indicate what the first phase of her training entailed. Moreover, there was also no evidence that Claimant had even sought treatment with a panel doctor. Allowing Bureau documents to be set aside when mistakes are made is not a precedent this [WCJ] is going to set, nor one this [WCJ] believes should be set. The investigation was completed, and the determination was made to

4

deny the claim and [Adjuster] made a mistake. This is clearly distinguishable from the line of cases where there is information that is made available prior to the completion of an investigation where the claim has already been accepted.

*Id.* at 24.

Employer appealed to the Board, which affirmed the WCJ's Decision. The Board explained

that there is no allegation that Claimant supplied incorrect information to [Employer] which led to the [Medical-Only NCP], and there is no assertion that [Employer] later learned of facts indicating Claimant's claim was not compensable, thus making the acceptance of the claim erroneous. [Murphy] stated that [Employer] completed its investigation by September 15, 2022. After the investigation was complete, it issued the [Medical-Only NCP]. An employer who investigates an injury and issues an NCP cannot later contest its liability for the injury. [*Beissel v. Workmen's Comp. Appeal Bd. (John Wanamaker, Inc.)*, 465 A.2d 969 (Pa. 1983)]. As the WCJ found, the evidence establishes that [Adjuster] did not understand the EDI process and chose the action which resulted in the [Medical-Only NCP]. We cannot fault the WCJ's reasoning that EDI has been in place for years and that the lack of adequate training on [Adjuster's] part does not constitute a basis for relief. There was no breakdown in the administrative process so as to warrant relief and the system performed as intended. Lastly, because the WCJ made all necessary findings allowing for adequate appellate review, we reject the contention that she failed to issue a reasoned decision.

*Id.* at 39-40.

Employer now appeals to this Court. On appeal, Employer argues it is entitled to relief under Section 413(a) of the Workers' Compensation Act (Act),[3] 77 P.S. § 771, because the WCJ found the Medical-Only NCP was issued by mistake, and the WCJ committed legal error by not setting aside the Medical-Only NCP. Employer's Br. at 5. Employer further contends the Board erred by

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

5

concluding the WCJ's Decision was supported by substantial evidence of record and failing to find the WCJ's Decision capriciously disregarded material evidence. *Id.* Additionally, Employer asserts the WCJ failed to issue a "reasoned" decision as required by the Act. *Id.* In response, Claimant argues the Board did not err by affirming the WCJ's Decision because the WCJ's Decision was supported by substantial evidence of record and pertinent authority, and Employer was not entitled to set aside the Medical-Only NCP. Claimant's Br. at 1.

## DISCUSSION

This Court reviews the Board's orders in workers' compensation appeals for violations of a party's constitutional rights, violations of agency practice and procedure, and other errors of law. 2 Pa.C.S. § 704. We also review whether substantial evidence supports the findings of fact necessary to sustain the Board's decision. *Id.* Regarding questions of law, our standard of review is *de novo*, and our scope of review is plenary. *Sedgwick Claims Mgmt. Servs., Inc. v. Bureau of Workers' Comp., Fee Rev. Hearing Off. (Piszel & Bucks Cnty. Pain Ctr.)*, 185 A.3d 429 (Pa. Cmwlth. 2018). In other words, we consider the case anew, *see Manor v. Dep't of Pub. Welfare*, 796 A.2d 1020, 1029 (Pa. Cmwlth. 2002) (citation omitted), and we may review the entire record. *Probst v. Dep't of Transp., Bureau of Driver Licensing*, 849 A.2d 1135 (Pa. 2004).

When it comes to questions of credibility, the WCJ is the ultimate fact finder in workers' compensation cases and is entitled to weigh the evidence and assess credibility of witnesses. *Montano v. Advance Stores Co., Inc. (Workers' Comp. Appeal Bd.)*, 278 A.3d 969, 978 n.4 (Pa. Cmwlth. 2022) (citation omitted). "The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned." *A&J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*,

6

78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (citation omitted). This Court will not disturb a WCJ's findings so long as there is substantial evidence in the record to support those findings. *Berardelli v. Workmen's Comp. Appeal Bd. (Bureau of Pers. State Workmen's Ins. Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *W. Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (citation omitted). Where the burdened party is the only party to present evidence on an issue, and it loses, we address whether the WCJ capriciously disregarded competent evidence. *Cerasaro v. Workers' Comp. Appeal Bd. (Pocono Mountain Med., Ltd.)*, 717 A.2d 1111, 1112 (Pa. Cmwlth. 1998) (citation omitted). A capricious disregard of evidence occurs when there is a "willful, deliberate disbelief of an apparently trustworthy witness, whose testimony one has no basis to challenge." *Gallo v. Workmen's Comp. Appeal Bd. (United Parcel Serv.)*, 504 A.2d 985, 988 n.2 (Pa. 1986).

Further, Section 422(a) of the Act requires, in relevant part, that all parties in a workers' compensation case are entitled to "a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. § 834. A WCJ's decision is "reasoned" if it "allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). A WCJ need not discuss all evidence in the record to satisfy this

7

standard. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006).

> Section 413(a) of the Workers' Compensation Act (Act) provides:
>
> A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. § 771. In applying this section, the WCJ and the Board relied on our Pennsylvania Supreme Court's decisions in *Barna v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corporation)*, 522 A.2d 22 (Pa. 1987), and *Beissel*, 465 A.2d at 969.

In *Beissel*, the Pennsylvania Supreme Court held that where an employer had an opportunity to, and did in fact, investigate the cause of an employee's disability from an injury related to a fall at work, the issuance of the notice of compensation payable constituted an admission of the employer's liability. 465 A.2d at 971. Thus, the employer was precluded from later challenging its liability using favorable testimony from another physician to contradict "that which it admitted in its notice of compensation payable, namely that [the claimant's] disability at the time the notice of compensation payable was filed was related to [the claimant's work injury.]" *Id.* at 971-72. The Court noted that "to hold otherwise would afford the employer an opportunity to litigate that which it has already admitted. This we will not do." *Id.* at 972.

In *Barna*, the Pennsylvania Supreme Court addressed whether *Beissel* precluded the termination of disability payments which began after the employer

8

issued a notice of compensation payable, where the payments were made under a mistaken belief that the cause of the claimant's disability was work related. *Barna*, 522 A.2d at 23. Several weeks after the employer started making disability payments, the employer's doctor reviewed the claimant's hospital records and concluded his disability was not work related. *Id.* The employer petitioned for review of the notice of compensation payable, arguing the cause of the claimant's disability was not work related. *Id.* The referee accepted the employer's evidence and terminated the claimant's benefits. *Id.* On review, the Pennsylvania Supreme Court distinguished its holding in *Beissel* and reasoned that because the record did not show the employer actually investigated the claimant's condition before it issued its notice of compensation payable, the notice of compensation payable was "incorrect in a material respect." *Id.* Thus, the Court concluded that where an employer promptly commences payment of compensation before starting or completing its investigation into the cause of a claimant's injuries, and the employer later determines the claimant's disability was never work related, in the absence of evidence of repeated contests of the cause of disability, the employer must be permitted to seek relief. *Id.* The Court concluded that this rule "promotes the early payment to injured employees which is clearly contemplated by the Act while it preserves the legitimate expectation that an employer's liability under the Act for work-related injuries not become a general disability insurance policy." *Id.*

While generally instructive regarding an employer's challenge to liability after issuing a notice of compensation payable, *Beissel* and *Barna* are not directly applicable to the present case. While the same provision in Section 413 of the Act was the basis for the petitions in those cases as it is here, this case is distinguishable. This case does not deal with an employer seeking to review its initial recognition of

9

liability because it later appeared the disability which it agreed to compensate was not work related. Here, the WCJ found, and the record supports, that despite Employer's intention to deny Claimant's claim after it conducted its investigation, the Adjuster issued the Medical-Only NCP by mistake. Therefore, we must address whether Section 413(a) of the Act requires a WCJ to set aside a mistakenly issued notice of compensation payable.

The clearest indication of legislative intent is the plain language of a statute. *See Off. of Governor v. Donahue*, 98 A.3d 1223, 1237-38 (Pa. 2014). It is well established that "when the language of a statute is clear and unambiguous, it must be given effect in accordance with its plain and obvious meaning." *Commonwealth v. Ahlborn*, 699 A.2d 718, 720 (Pa. 1997). Section 413(a) of the Act's plain language is unambiguous and permissive in nature: "a workers' compensation judge **may**, at any time, review and modify or set aside a notice of compensation payable . . . if it be proved that such notice of compensation payable . . . was in any material respect incorrect." 77 P.S. § 771 (emphasis added). "Although 'may' can mean the same as 'shall' where a statute directs the doing of a thing for the sake of justice, it ordinarily is employed in the permissive sense." *Commonwealth v. Garland*, 142 A.2d 14, 17 n.5 (Pa. 1958) (citations omitted); *Commonwealth v. A.M. Byers Co.*, 31 A.2d 530, 532 (Pa. 1943) ("The word 'may' clearly implies discretionary power. The language is permissive, rather than mandatory."). Additionally, although our courts have occasionally interpreted the word "may" in a statute as mandatory, we have done so "usually where the ends of justice or constitutional requirements so dictate." *Treaster v. Union, Twp.*, 242 A.2d 252, 255 (Pa. 1968).

In *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sadvary)*, 570 A.2d 84 (Pa. 1990), the Pennsylvania Supreme Court interpreted the

legislature's use of the word "may" in another section of the Act, Section 307(7), 77 P.S. § 562,  and explained:

> Section 307(7) of the Act states, in pertinent part:
>
>> Provided, however, That if, upon investigation and hearing, it **shall** be ascertained that the widow or widower is living with a man or a woman as the case may be, in a meretricious relationship and not married, or the widow living a life of prostitution, the Board *may* order the termination of compensation payable to such widow or widower. (Emphasis added).
>
> With regard to death or remarriage, § 307(7) provides that
>
>> Should any dependent of a deceased employe die or remarry, or should the widower become capable of self support, the right of such dependent or widower to compensation under this section **shall** cease except that if a widow remarries, she **shall** receive 104 weeks compensation at a rate computed in accordance with class 2 of § 307 in a lump sum after which compensation shall cease . . . (Emphasis added) (Footnote omitted).
>
> Thus, within the same provision, the legislature has specifically used the words "shall" and "may".
>
> While we are cognizant of the principle of law set forth in *Hotel Casey v. Ross*, . . . 23 A.2d 737, 740 ([Pa. ]1942), that, "where a statute directs the doing of a thing for the sake of justice, the word 'may' means the same as the word 'shall'", we are bound by principles of statutory construction in interpreting any statute.  In particular, we have long been guided by the principle that when enacting legislation, the legislature does not intend to violate any constitutional provisions. 1 Pa.C.S. § 1922(3). Furthermore, common usage of a word is appropriate unless specified otherwise.  1 Pa.C.S. § 1903(a). Finally, if language is not ambiguous, then we cannot ignore its plain meaning to reach a desired result. 1 Pa.C.S. § 1921(b).
>
> The use of the word "may" in § 307(7) cannot be considered insignificant or coincidental when compared with other parts of that section as well as other provisions of the Act.  For example, in § 307(7)

11

the legislature chose the word "shall" to mandate what group would be the beneficiary of benefits. Furthermore, § 307(7) denies the Board any discretion in determining when a widow of an employee will receive compensation through the choice of the word "shall". Finally, concerning the [effect] of a widow's marriage, the legislature used the word "shall" rather than "may" in setting forth a widow's right. The remaining sections of the Act are replete with similar examples.

Although there may be some instances when the legislature interchangeably uses "may" and "shall", this does not appear to be such an instance. Without clear direction by the legislature to the contrary, we conclude that the use of the word "may" in § 307(7) granted discretion to the Board.

*Bethenergy*, 570 A.2d at 85-86.

Relying on the Pennsylvania Supreme Court's analysis set forth in *Bethenergy*, this Court addressed a similar issue in an unpublished opinion, *Hiler v. Workers' Compensation Appeal Board (U.S. Airways Group, Inc.)* (Pa. Cmwlth., No. 2106 C.D. 2008, filed September 16, 2009).[4] In *Hiler*, a claimant challenged a WCJ's denial of reimbursement for the claimant's attorney's travel expenses. *Id.*, slip op. at 11-12. Section 131.67(a) of the Special Rules of Administrative Practice and Procedure Before Workers' Compensation Judges (Special Rules), 34 Pa. Code § 131.67(a), provides: "If a deposition is to be taken more than 100 miles from where the hearing is or would be scheduled, the judge *may* order the payment of reasonable expenses of attorneys, not including counsel fees, to attend the deposition." (Emphasis added.) Three depositions took place more than 100 miles from the hearing location, but the WCJ concluded that the travel and lodging expenses were not reimbursable. *Id.* Thus, this Court considered whether the WCJ erred by refusing to order payment for the travel expenses. Specifically, we interpreted the

---

[4] This unpublished opinion is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

12

legislature's use of the word "may" in the Special Rules. In addressing this issue, this Court explained:

> The use of the word "may" in the Special Rules is determinative. In *Bethenergy*[,] . . . 570 A.2d [at 85-86], our Pennsylvania Supreme Court explained the use of the term, "may" in the Act[.]
>
> . . . .
>
> . . . Our Pennsylvania Supreme Court determined that because the word "shall" was used elsewhere in the Act, the two words were not interchangeable and that the term "may" was discretionary.
>
> Here, the Special Rules are not part of the Act but implement the Act. Further, a review of other special rules reveals that the words "may" and "shall" are used in the same rule which indicates that the two words were not used interchangeably. Under the same analysis employed by our Supreme Court in *Bethenergy*, it is clear that the WCJ had discretion to award costs.

*Hiler*, slip op. at 12.

Likewise, here, Section 413(a) of the Act indicates a WCJ **may** set aside a notice of compensation payable that is incorrect. As addressed in *Bethenergy* and *Hiler*, the words "may" and "shall" are both used throughout the Act, which indicates the two words are not used interchangeably. *See Bethenergy*, 570 A.2d at 85-86. The common usage of the word "may," which is unambiguous, leads us to conclude the legislature intended to confer discretion on the WCJ to set aside an incorrect notice of compensation payable. Accordingly, we conclude the WCJ had discretion to decide whether to set aside the Medical-Only NCP. Even after she found it was incorrectly issued, Section 413(a) of the Act did not require her to set aside the incorrectly issued Medical-Only NCP.

13

## CONCLUSION

The WCJ's Decision was supported by substantial evidence of record, and the WCJ did not capriciously disregard material competent evidence. This is not a case where the WCJ engaged in "willful, deliberate disbelief of an apparently trustworthy witness, whose testimony one ha[d] no basis to challenge." *See Gallo*, 504 A.2d at 988 n.2. Rather, the WCJ accepted Employer's evidence and found Adjuster issued the Medical-Only NCP by mistake as she asserted. Nevertheless, because the WCJ had discretion to set aside the Medical-Only NCP, even where she accepted it was issued by mistake of the Adjuster, we discern no legal error in the Board's affirmance of the WCJ's Decision. Moreover, the WCJ adequately explained the basis for her Decision such that our appellate review has not been impeded, and we are not in need of further explanation or clarification to reach our decision. Therefore, the WCJ's Decision satisfies the reasoned decision requirement of Section 422(a) of the Act. Accordingly, the Board's Order is affirmed.

_____
STACY WALLACE, Judge

Judge Dumas did not participate in the decision of this case.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia and : 
PMA Management Corp, : 
                  Petitioners : 
                   : 
        v. : No. 648 C.D. 2024
                   : 
John Bell (Workers' : 
Compensation Appeal Board), : 
              Respondent : 

# **O R D E R**

**AND NOW**, this 2nd day of April 2025, the April 24, 2024 order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
STACY WALLACE, Judge